# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES ANDREW SULLIVAN,<br><br>Defendant. | Case No. CR12-0023<br><br>ORDER FOR PRETRIAL DETENTION |

On the 5th day of April, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On April 4, 2012, Defendant James Andrew Sullivan was charged by Indictment (docket number 2) with distribution of heroin within 1,000 feet of a school. Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on June 4, 2012.

At the hearing, Marion Police Officer James Hancox testified regarding the circumstances underlying the instant charge.[2] In November 2011, Marion Police were called to Alicia Broadwater's residence regarding a "man down." The "man down" was Defendant. By the time police arrived at Broadwater's residence, Defendant had regained consciousness, and refused medical treatment. Defendant admitted to law enforcement that

---

[1] The government's request to detain Defendant was made at his initial appearance on the Complaint filed in *United States v. James Andrew Sullivan*, 1:12-mj-00055-JSS (N.D. Iowa). Prior to the hearing, however, a Grand Jury returned an Indictment in the instant action.

[2] Officer Hancox is assigned to the DEA Drug Task Force.

1

he had been using marijuana, but denied using heroin. Broadwater reported to law enforcement, however, that Defendant had used heroin in her apartment.

On December 7, 2011, Marion Police were called regarding Broadwater being "down." Broadwater was taken to St. Luke's Hospital in Cedar Rapids, Iowa, for a heroin overdose. When interviewed by law enforcement, Broadwater stated that she had overdosed on heroin. She gave law enforcement permission to search her residence and cell phone. Text messages from her phone revealed she and Defendant were "sick" from heroin withdrawal, and were looking for heroin. Defendant wrote that he was going to sell DVDs in order to purchase heroin. Broadwater was committed to the drug treatment ward at St. Luke's.

On December 10, 2011, Cedar Rapids Police were called to St. Luke's to investigate two syringes that were brought into the locked ward where Broadwater was getting treatment for her heroin addiction. Broadwater told law enforcement that Defendant visited her twice on December 10. During the first visit, Defendant, Broadwater, and another patient discussed Defendant obtaining heroin and bringing it to them in the hospital. The other patient gave Defendant a source to obtain heroin. Defendant left the hospital, met the drug source, purchased heroin, and returned to the hospital with two syringes. Defendant was interviewed on December 22, 2011, and provided a similar story to law enforcement. Defendant stated that he visited Broadwater and discussed getting heroin for her and another patient. The other patient provided Defendant with a phone number to get heroin. Defendant left the hospital, called the phone number, arranged to purchase heroin, met the source at an arranged location, and purchased the heroin. Defendant stated that he loaded two syringes, and injected himself with one, and took the other to the hospital. When police told Defendant they found two syringes at the hospital, Defendant replied "might have been, I was high."

Law enforcement executed search warrants at Defendant's residence on December 22, 2011 and again on March 26, 2012. In both searches, police found items consistent with marijuana and heroin use. Police also found items associated with copying DVDs,

2

games, and CDs. More than 100 such items were found. Law enforcement also found a large stack of pornographic pictures printed from a computer next to Defendant's bed. At least four images of child pornography were found in the stack of pictures. When asked about the images of child pornography, Defendant stated that he did not know anything about the child pornography, and indicated that he had printed the pictures "years" earlier.

Law enforcement also investigated Defendant's dealing with pawn shops. Between January 2012 and March 2012, Defendant sold 154 items, mostly books, to pawn shops for $2,800. Witnesses told police that most of the items Defendant sold were stolen. Witnesses also told police that the money Defendant received for selling these items was used to purchase heroin. On March 29, 2012, Defendant was arrested at a Barnes and Noble bookstore for stealing books.

According to the pretrial services report, Defendant is 30 years old. He is a lifelong resident of Marion, Iowa. He currently resides with his father in Marion. Defendant is currently unmarried, but was married once in the past. He has no children.

Defendant has been unemployed since January 2012. Prior to being unemployed, Defendant worked for approximately one year as a cook at Cocktails and Company in Marion. He also worked at a Quizno's sandwich shop from 2000 to 2006, and at the VIP Lounge from 2006 to 2011. Except for a hernia, Defendant reported that he was in good physical health. Defendant also reported that for the past two months he has been undergoing mental health treatment for anxiety at St. Luke's.

Defendant told the pretrial services officer that he started using marijuana at age 20, and has used marijuana 6 or 7 times per year since that time. Defendant stated that he had not used marijuana in the past 12 months. According to Defendant, he first used heroin 3 to 4 months prior to his arrest. He stated that he used heroin once per week, and his last use was one week before he was arrested.

Turning to Defendant's criminal record, in 2001 Defendant was arrested and later convicted of possession of drug paraphernalia, fifth degree theft, and assault on peace officers. In 2003, Defendant was convicted of possession of a controlled substance. He

received a deferred judgment and was given 1 year probation. He was discharged from probation on May 4, 2004. In 2006, Defendant was charged and later convicted of domestic abuse assault. Again, he received a deferred judgment and 1 year probation.

On August 25, 2007, Defendant was charged with OWI, first offense. He failed to appear for arraignment, and an arrest warrant was issued. On November 4, 2007, while the arrest warrant was outstanding, Defendant was again arrested for OWI. In May 2008, Defendant was sentenced on both OWI charges. He was sentenced to 65 days in jail with all but 5 days suspended, and 1 year probation. He was discharged from probation in April 2009.

On December 30, 2011, Defendant was charged and later convicted of fifth degree theft. On March 29, 2012, Defendant was arrested and charged with fourth degree theft. That matter remains pending in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

received a deferred judgment and was given 1 year probation. He was discharged from probation on May 4, 2004. In 2006, Defendant was charged and later convicted of domestic abuse assault. Again, he received a deferred judgment and 1 year probation.

On August 25, 2007, Defendant was charged with OWI, first offense. He failed to appear for arraignment, and an arrest warrant was issued. On November 4, 2007, while the arrest warrant was outstanding, Defendant was again arrested for OWI. In May 2008, Defendant was sentenced on both OWI charges. He was sentenced to 65 days in jail with all but 5 days suspended, and 1 year probation. He was discharged from probation in April 2009.

On December 30, 2011, Defendant was charged and later convicted of fifth degree theft. On March 29, 2012, Defendant was arrested and charged with fourth degree theft. That matter remains pending in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger

to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with distribution of heroin within 1,000 feet of a school. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, pursuant to § 3142(e)(3)(A), there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. In an interview with law enforcement, Broadwater told the officer that Defendant brought her heroin while she was at St. Luke's hospital in drug treatment. When law enforcement interviewed Defendant, he admitted taking heroin to Broadwater while she was at St. Luke's in drug treatment.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin; its use often results in overdose and death. Indeed, in November 2011, police responded to the scene when Defendant apparently overdosed on heroin. On December 7, 2011, Broadwater overdosed on heroin and was taken to St. Luke's hospital where she was committed for treatment of her heroin addiction. Three days later, on December 10, 2011, Defendant purchased heroin and delivered it to Broadwater in the hospital. Defendant's actions demonstrate that he is a serious danger to the community. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Accordingly, there is no condition or combination of conditions that would assure the safety of the community if Defendant is released. Therefore, based on the serious nature and circumstances of the offense, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 5th day of April, 2012.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA